UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61528-CIV-MARRA

DAVID GOLDBERG, tomorrow

       Plaintiff,

vs.

UNITED STATES OF AMERICA,

       Defendant,

And

UNITED STATES OF AMERICA,

       Counterclaimant,

vs.

DAVID GOLDBERG,

       Counterdefendant and
       Third-Party Plaintiff,

vs.

BRIAN BONAR and COLIN NIVEN
BONAR,

       Third-Party Defendants.

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Third-Party Defendants Brian Bonar and Colin Niven Bonar's (collectively, the "Bonars") Motion to Dismiss [D.E. No. 20] David Goldberg's Third-Party Complaint [D.E. No. 9]. The Court has carefully considered the Motion and is

1

otherwise fully advised in the premises. Because the Court finds that it lacks personal jurisdiction over the Bonars, the Bonars' Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

In the instant case, Goldberg sued the United States pursuant to 26 U.S.C. § 6672, seeking a refund of money he paid to the Internal Revenue Service ("IRS"). [D.E. No. 1, ¶ 1]. Goldberg served as CEO of Allegiant Professional Services, Inc. ("Allegiant"), a professional employer organization that solicited other companies to "co-employ" with them, whereby Allegiant would manage their payroll and pay withholding taxes to the IRS. [*Id*. ¶¶ 13–15]. Goldberg alleges that although he was CEO, he had no control or knowledge of Allegiant's financial affairs or tax obligations, except to approve sales-related expenses. [*Id*. ¶ 18]. Goldberg claims that the Bonars ran the entire business and made all non-sales decisions from Allegiant's San Diego office. [*Id*. ¶ 22; D.E. No. 9, ¶ 15].

The IRS informed Goldberg that Allegiant's taxes for several quarters were unpaid and determined that Goldberg was responsible for the unpaid taxes. [D.E. No. 1, ¶¶ 23–24]. Goldberg paid a portion of those taxes, but he later filed a Form 842 Claim of Refund and Request for Abatement. [*Id*. ¶¶ 7–8; Exh. 5]. The IRS denied Goldberg's claim and Goldberg filed the instant suit. [*Id*. ¶ 11]. The United States filed an Answer and Counterclaim against Goldberg pursuant to 26 U.S.C. § 6672 for unpaid trust fund recovery penalties and interest. [D.E. No. 6]. Goldberg then filed his Answer to the Counterclaim and a Third-Party Complaint against the Bonars. [D.E. No. 9].

In his Third-Party Complaint, Goldberg asserts the following claims against the Bonars: Count 1) indemnification; Count 2) civil conspiracy; Count 3) willful and wanton misconduct; and Count 4) constructive fraud. [*Id*.]. Generally, he claims that he should not be liable for

Allegiant's unpaid taxes because the Bonars owned and controlled Allegiant and had a duty to pay the taxes.  [*Id*. ¶ 2].  Moreover, Goldberg did not have control over Allegiant's funds.  [*Id*. ¶ 6].  Goldberg alleges that the Bonars illegally used the money that was to be paid to the IRS for their own purposes without Goldberg's knowledge, including purchasing lavish assets for themselves, paying themselves high salaries and bonuses, and diverting funds to corporate entities they owned.  [*Id*. ¶ 17].

Goldberg's apparent basis for asserting personal jurisdiction over the Bonars is that they were "owners and/or controlling parties of Allegiant, doing business in the Southern District of Florida."  [*Id*. ¶ 6].  According to the Third-Party Complaint, Brian Bonar signed Allegiant's 2008 application to transact business in Florida, which listed Brian Bonar as president and treasurer.  *Id*.  Additionally, in 2010, Allegiant filed an application in Florida to reinstate a for-profit corporation, and Brian Bonar was listed as president, treasurer, and director, while Colin Nevin Bonar was listed as chief operating officer ("COO").  *Id*.  Then, in 2011, Allegiant filed an annual report, which listed Colin Nevin Bonar as COO.  *Id*.  Goldberg claims that the Bonars traveled to South Florida many times to meet with Allegiant's clients and sales people, and conduct business on behalf of Allegiant and themselves.  *Id*.

The Bonars' Motion to Dismiss argues that: 1) the Court lacks personal jurisdiction over the Bonars; 2) 26 U.S.C. § 6672 requires Goldberg to bring a separate, independent action to seek recovery from the Bonars; 3) the civil conspiracy count and the willful and wanton misconduct count are not sufficiently derivative of the main claim and, therefore, are not properly brought as Rule 14 claims; and 4) each count of the Third-Party Complaint fails to state a claim upon which relief can be granted under Florida law.  [D.E. No. 20, ¶ 5a–5d].

## II. DISCUSSION

"The Eleventh Circuit has held that in deciding Rule 12(b) motions to dismiss, district courts should, as an initial matter, address any personal jurisdiction arguments raised by defendants." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134 (S.D. Fla. 2007) (citing *Madara v. Hall*, 916 F.2d 1510, 1513–14 (11th Cir. 1990)).

### A. The Court lacks personal jurisdiction over the Bonars.

A defending party may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To determine whether a nonresident defendant is subject to personal jurisdiction, two requirements must be met: 1) the Florida long-arm statute must be satisfied; and 2) the exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Posner, et al. v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). Thus, if Florida's long-arm statute is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (citing *Sculptchair*, 94 F.3d at 626); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Florida's long-arm statute provides for both specific and general personal jurisdiction. Fla. Stat. § 48.193(1)–(2). Specific personal jurisdiction refers to the Court's jurisdiction over a nonresident defendant if the asserted cause of action "arises from" that defendant's actions within the forum. Fla. Stat. § 48.193(1); *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 854 (11th Cir. 2013). General personal jurisdiction refers to the Court's jurisdiction over

nonresident defendants who are "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, [and] whether or not the claim arises from that activity." Fla. Stat. § 48.193(2); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

Florida law determines the application of the long-arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Court is required to apply the statute as the Supreme Court of Florida would and "adhere to the interpretations of [the statute] offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1352 (citing *Sculptchair*, 94 F.3d at 627).

### i. *Goldberg does not allege sufficient facts to support long-arm jurisdiction*

In determining whether the Florida long-arm statute is satisfied, the plaintiff bears the initial burden of alleging sufficient material facts in his complaint to support long-arm jurisdiction. *Future Tech. Today, Inc.*, 218 F.3d at 1249 (11th Cir. 2000) (citing *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)); *see Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). If the plaintiff satisfies that requirement, the burden shifts to the defendant to submit affidavits or other evidence to challenge the plaintiff's allegations in the complaint. *Sculptchair*, 94 F.3d at 627. If the defendant meets this burden, the plaintiff must "'substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.'" *Future Tech. Today, Inc.*, 218 F.3d at 1249 (quoting *Prentice*, 779 F. Supp. at 583).

The relevant portion of Florida's long-arm statute reads:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal

5

representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state…

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(1)–(2).

### Goldberg's Allegation of Personal Jurisdiction in his Third-Party Complaint

Goldberg alleges in his Third-Party Complaint that the Bonars controlled Allegiant, an out of state business authorized to operate in Florida, and visited Florida on several occasions to conduct business for Allegiant. [D.E. No. 9, ¶ 6]. This would seem to satisfy § 48.193(1)(a) of the long-arm statute by "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."

### The Bonars' Motion to Dismiss and Evidence Refuting Personal Jurisdiction

The Bonars argue in their Motion that Goldberg's allegations of personal jurisdiction fail to satisfy Florida's long-arm statute with respect to both specific and general jurisdiction. Mot. at 9–10. They claim that Goldberg's Third-Party Complaint does not reference the long-arm statute or identify which section of the statute he relies on to establish jurisdiction. *Id*. at 4. The Bonars argue that if the Third-Party Complaint purports to establish personal jurisdiction over the Bonars because of their activity with Allegiant, the corporate shield doctrine applies. *Id*. at 6. Further, given the Bonars' lack of contacts with Florida, as detailed in their affidavits, Goldberg cannot establish general personal jurisdiction under the long-arm statute. *Id*. at 6–10.

The Bonars each submitted sworn declarations with their Motion to contest the allegations in the Third-Party Complaint and support their position that the Court does not have personal jurisdiction over them. In Brian Bonar's sworn affidavit, he explained that he had not voluntarily submitted himself to jurisdiction in Florida and had not "engaged in any conduct" which would cause him to "be subject the jurisdiction of this Court." Mot. at 27. Similarly, in Colin Nevin Bonar's sworn affidavit, he stated that he had not "engaged in any conduct which would cause [him] to be subject to the jurisdiction of this Court." *Id*. at 32. The Bonars reside in California, have never had a mailing address in Florida, do not maintain bank accounts in Florida, do not own—and have never owned—real property in Florida, and have never visited Florida with the exception of the visits for their work with Allegiant. *Id*. at 27, 32. Allegiant applied for and received authorization to conduct business in Florida in 2008, when Brian Bonar served as Allegiant's president and treasurer. *Id*. at 28. Colin Nevin Bonar became a sales person for Allegiant in 2008 and was later promoted to COO. *Id*. at 32. Allegiant's main office was located in Marlton, New Jersey, and it maintained a regional office in San Diego, California. *Id*. at 28. Less than five people worked in Allegiant's Florida office with Goldberg. *Id*. Neither of the Bonars maintained an office in Florida. *Id*. at 27, 32. The Bonars visited Florida around five times a year from 2009 to 2012 primarily to meet with the insurance company that provided worker's compensation insurance to Allegiant's employees. *Id*. at 28–29, 32–33. Neither of the Bonars had any personal or other business dealings on their visits to Florida. *Id*. at 29, 33.

**Goldberg's Response to the Bonars' Motion to Dismiss**

Goldberg responds in his Opposition brief that the Bonars were conducting business in Florida, which subjected them to jurisdiction pursuant to Fla. Stat. § 48.193(1)(a), including Allegiant maintaining an office in Florida and the Bonars travelling to Florida for business.

7

Opp. at 5. Goldberg further argues that the corporate shield doctrine does not prevent the Court from exercising jurisdiction over the Bonars because the doctrine does not apply when an employee commits fraud or intentional misconduct. Opp. at 6–7. Since Goldberg contends that the Bonars committed civil conspiracy, willful and wanton misconduct, and constructive fraud, he argues that the Bonars fall under an exception to the corporate shield doctrine. *Id*. However, Goldberg did not submit any affidavits, declarations, testimony, or other evidence with his opposition brief.

### The Corporate Shield Doctrine

The corporate shield doctrine prohibits acts of a corporate employee performed in a corporate capacity from forming the basis for jurisdiction over that employee in an individual capacity. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). The Supreme Court of Florida explained that the doctrine's rationale is "'that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Id*. (citation omitted). Because all of the Bonars' contacts with Florida were in a corporate-employee capacity for the benefit of Allegiant (and not themselves), the corporate shield doctrine should apply. However, Goldberg argues that the Bonars fall under an exception to the corporate shield doctrine.

The court in *Doe* discussed the exception to the corporate shield doctrine, explaining that "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction…." *Id*. at 1006 n.1. Goldberg cites *Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012), *Van Vechten v. Elenson*, 920 F. Supp. 2d 1284 (S.D. Fla. 2013), and *Oesterle v. Farish*, 887 So. 2d 412 (Fla. 4th DCA 2004) in support of his argument that the corporate shield doctrine does not apply to the Bonars. *Kitroser*, *Vechten*, and *Oesterle* stand for the proposition that a

defendant alleged to have committed a tort or an intentional tort in Florida will be subject to personal jurisdiction in Florida.[1] These cases do not support Goldberg's position since he does not allege that the Bonars committed a tort or intentional tort "in Florida."

In discussing the fraud exception to the corporate shield doctrine, the *Doe* court cited *Duke v. Young*, 496 So. 2d 37 (Ala. 1986). *Doe*, 620 So. 2d at 1006 n.1. The *Duke* court explained that a defendant may not rely on the corporate shield doctrine when his acts, although in a corporate capacity, are "intentional, and allegedly tortious, actions… expressly aimed at [the forum state]." *Duke*, So. 2d at 39 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). In *Calder*, a California plaintiff sued a Florida newspaper and others in California state court, alleging that she had been libeled in an article written and edited by the defendants in Florida. *Calder*, 465 U.S. at 784–85. The *Calder* Court explained that personal jurisdiction is appropriate for nonresident employee defendants where their actions amount to more than "mere untargeted negligence" but rather consist of "intentional, and allegedly tortious, actions" expressly aimed at

---

[1] In *Kitroser*, a woman's estate brought a wrongful death suit against a commercial truck owner, the truck driver, and nonresident employees of the owner who helped train and supervise the truck driver. *Kitroser*, 85 So. 3d at 1085–86. The nonresident employees moved to dismiss for lack of personal jurisdiction, arguing that they were protected by the corporate shield doctrine because, although their acts were committed in Florida, they were acting within the scope of their employment. *Id*. at 1088. The Supreme Court of Florida disagreed with the nonresidents and held that "where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant. Jurisdiction properly applies to 'any person' who commits torts 'within this state.'" *Id*. at 1090 (citation omitted).

In *Van Vechten*, a nonresident employee was sued for an alleged theft in Florida. *Van Vechten*, 920 F. Supp. 2d at 1287–88. The defendant moved to dismiss for lack of personal jurisdiction, arguing that because he engaged in business on behalf of his employer, he was not acting "personally" for purposes of the long-arm statute. *Id*. at 1290. The court denied the defendant's motion to dismiss and held that even if a person commits a tortious act in Florida on behalf of an employer, and not for the personal benefit of the individual, that person will be subject to personal jurisdiction in the state. *Id*.

Finally, in *Oesterle*, plaintiff brought suit against a nonresident managing agent of a company for breach of contract and fraud. *Oesterle*, 887 So. 2d at 413. On appeal after a denial of his motion to dismiss for lack of personal jurisdiction, the defendant argued that he was protected by the corporate shield doctrine. *Id*. at 415. The court disagreed, explaining that "a corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." *Id*. (quotations and citations omitted). "Because the complaint allege[d], and the evidence support[d], that [defendant] committed an intentional tort in Florida against a Florida resident, both the statutory predicate and due process are satisfied." *Id*.

the forum state that "they knew would have a potentially devastating impact upon [the forum state's resident]." *Id*. at 789–90.

In the instant case, Goldberg alleges that the Bonars committed intentional conduct—civil conspiracy, willful and wanton misconduct, and constructive fraud—and, as a result of this unlawful and intentional conduct, the United States seeks to recover Allegiant's unpaid taxes from Goldberg. [D.E. No. 9, ¶¶ 25, 28, 32, 36]. Specifically, Goldberg alleges that the Bonars used money that was to be paid to the IRS to purchase assets for themselves, pay themselves outrageous salaries, and divert money into other corporate entities, and that all of this activity was done out of Allegiant's San Diego office. *Id*. at ¶¶ 15–17.

Although Goldberg alleges more than "untargeted negligence," he does not allege, argue, nor submit evidence that the Bonars' conduct was expressly aimed at Goldberg or would have a potentially devastating impact upon Goldberg.[2] Even if the Bonars allegedly committed intentional tortious actions, there is no allegation or foreseeability that it would have an impact upon Goldberg in Florida by way of the IRS seeking unpaid taxes from him personally. Hence, the Bonars do not fall under the exception to the corporate shield doctrine, and because all of the Bonar's contacts with Florida were in a corporate-employee capacity for the benefit Allegiant, the corporate shield doctrine applies.

Goldberg does not allege sufficient facts to satisfy specific personal jurisdiction or general personal jurisdiction under Florida's long arm statute.

---

[2] *See also Rensin v. State, Office of Atty. Gen., Dep't of Legal Affairs*, 18 So. 3d 572, 575–76 (Fla. 3d DCA 2009) ("In each of these cases where jurisdiction was found, the plaintiff produced evidence of the specific conduct on the part of the corporate officer that constituted a fraud or an intentional tort. In each case, the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida.").

### *ii.     The Bonars' minimum contacts*

In specific personal jurisdiction cases, the Court applies a three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355.  In general personal jurisdiction cases, the due process requirements are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

Because the Court determines that Goldberg failed to allege sufficient facts to satisfy Florida's long-arm statute, is it unnecessary to address whether minimum contacts exist.

### III.     CONCLUSION

Accordingly, it is hereby ORDERED and ADJUDGED as follows:

Third-Party Defendants' Motion to Dismiss is **GRANTED** based on the Court's lack of personal jurisdiction over the Bonars.  The Court does not address the other grounds asserted by the Bonars in their motion.  This case is dismissed against the Bonars without prejudice to Goldberg pursuing the claims asserted before a court that has jurisdiction over the Bonars.

Done and ordered in Chambers in West Palm Beach, Florida this 9th day of June, 2014.

KENNETH A. MARRA
United States District Judge